UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 04-12188 WGY

MARIA MIARA,
Plaintiff,

v.

FIRST ALLMERICA FINANCIAL
LIFE INSURANCE COMPANY,
JOSEPH F. BONASERA, BAKER
ASSOCIATES INSURANCE AGENCY INC,
and GARY M. BAKER,
Defendants

## CERTIFICATION OF FILING ALL PAPERS REQUIRED BY LOCAL RULE 81

I, Richard Neumeier, attorney for the defendant, hereby affirms that the attached are certified copies of all records and proceedings in the Massachusetts Superior Court within and for the County of Suffolk, and a certified copy of all docket entries within the said Superior Court, including the filing of the Notice of Removal.

Respectfully submitted,

BAKER ASSOCIATES INSURANCE AGENCY, INC., and GARY M. BAKER,

By their attorneys,

MORRISON MAHONEY LLP

*/s/ Richard J. Neumeier*

Richard L. Neumeier
250 Summer Street
Boston, MA 02210-1181
(617) 439-7500

936081v1

MA‍-20030912                **Commonwealth of Massachusetts**                10/26/2004
guen                                              **SUFFOLK SUPERIOR COURT**                   03:13 PM
                                                                  Case Summary
                                                                   Civil Docket

## SUCV2004-04067
### Miara v First Allmerica Financial Life Ins Co et al

| File Date | 09/15/2004 | Status | Disposed: transfered to other court (dtrans) |
|---|---|---|---|
| Status Date | 10/26/2004 | Session | B - Civil B |
| Origin | 1 | Case Type | B04 - Other negligence/pers injury/pro |
| Lead Case | | Track | F |

| Service | 12/14/2004 | Answer | 02/12/2005 | Rule12/19/20 | 02/12/2005 |
|---|---|---|---|---|---|
| Rule 15 | 02/12/2005 | Discovery | 07/12/2005 | Rule 56 | 08/11/2005 |
| Final PTC | 09/10/2005 | Disposition | 11/09/2005 | Jury Trial | No |

### PARTIES

**Plaintiff**
Maria Miara
Active 09/15/2004

**Private Counsel 551090**
Shannon M Fitzpatrick
Nathanson & Goldberg
2 Oliver Street
8th floor
Boston, MA 02109
Phone: 617-210-4800
Fax: 617-210-4824
Active 09/15/2004 Notify

**Defendant**
First Allmerica Financial Life Ins Co
Served: 10/14/2004
Served (answr pending) 10/20/2004

**Defendant**
Joseph F Bonasera
Served: 09/20/2004
Served (answr pending) 09/23/2004

**Defendant**
Baker Associates Ins Agency Inc
Served: 09/23/2004
Served (answr pending) 09/28/2004

**Private Counsel 369620**
Richard L Neumeier
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
Phone: 617-439-7500
Fax: 617-439-7590
Active 10/26/2004 Notify

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                                          SUPERIOR COURT DEPT.
                                                     CIVIL ACTION NO.

| | |
|---|---|
| MARIA MIARA,<br>Plaintiff | )<br>)<br>) |
| v. | )<br>) COMPLAINT<br>) AND JURY DEMAND |
| FIRST ALLMERICA FINANCIAL<br>LIFE INSURANCE COMPANY,<br>JOSEPH F. BONASERA, BAKER<br>ASSOCIATES INSURANCE<br>AGENCY, INC., and<br>GARY M. BAKER,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>) |

**Parties**

1. Plaintiff is an individual residing in Lynnfield, Essex County, Massachusetts.

2. Defendant Baker Associates Insurance Agency, Inc. ("Baker Associates") was a Massachusetts corporation with a principal office in Boston, Suffolk County, Massachusetts. Baker Associates was formerly known as Bloom-Baker Insurance Association ("Bloom-Baker"). Baker Associates was voluntary dissolved on December 15, 2003.

3. Defendant Gary M. Baker ("Baker") is an individual residing, on information and belief, in Mashpee, Barnstable County, Massachusetts. At all times material hereto, Baker was the principal officer, shareholder, and authorized representative of Baker Associates.

4. Defendant First Allmerica Financial Life Insurance Company ("Allmerica") is a Massachusetts corporation with a principal office in Worcester, Worcester County, Massachusetts. Allmerica was formerly known as State Mutual Life Assurance Co. ("State Mutual").

5. Defendant Joseph F. Bonasera ("Bonasera") is an individual residing, on information and belief, in Brewster, Barnstable County, Massachusetts. On information and belief, at times material hereto, Bonasera was an officer and authorized representative of State Mutual and Allmerica.

## Facts

6. Plaintiff and her now deceased husband owned a small company called New England Chain Link Fence Co., Inc. ("New England Chain" or "the company").

7. In 1989, Plaintiff contacted defendant Baker to inquire about establishing a pension plan or profit sharing plan for the company. Baker suggested that he bring in Bonasera from State Mutual to discuss with Plaintiff and her husband what plans were suitable for the company.

8. Baker and Bonasera met with the Plaintiff and her husband at least twice. Plaintiff and her husband repeatedly explained that whatever plan they chose must have spousal survivor benefits, particularly for the behalf of the Plaintiff, who was considerable younger than her husband.

9. Baker and Bonasera recommended a Defined Benefits Plan. They represented that although the plain was more expensive to administer, it had a great advantage over alternative plans because the Pension Benefit Guaranty Corporation ("PBGC") guaranteed the plan.

10. Baker and Bonasera assured Plaintiff and her husband that PBGC guaranteed 100% spousal benefits in the event that anything were to happen to either Plaintiff or her husband. Baker and Bonasera did not give any qualifications to the guaranty of full spousal benefits.

11. In reliance on these representations, Plaintiff and her husband chose the Defined Benefits Plan that Baker and Bonasera had recommended (the "plan").

12. The pension plan contract (the "Contract") was effective September 1, 1989, and was renewed each year.

13. On August 22, 1996, Plaintiff's husband was killed in an automobile accident. Shortly thereafter, Bonasera told Plaintiff that in order to get the PBGC survivor benefits, she would have to close the company and put it into bankruptcy.

14. On October 8, 1996, Allmerica sent Plaintiff written death benefit information, informing her that she could either start collecting monthly death benefits of $1,382.80 as of September 1, 1996, or defer collection until February 1, 2002, at which time she would get a monthly benefit of $2,457.27. When Plaintiff spoke with Bonasera about the options, he reiterated that she would get the full spousal benefit regardless of which option she chose. Plaintiff wrote to Allmerica on December 4, 1996, to inform the company that she chose the second option.

15. In reliance on Bonasera's representations that she would have to close the business and put the company into bankruptcy in order to get the death benefits from PBGC, Plaintiff liquidated the company's assets at a loss and filed for Chapter 7 bankruptcy protection.

16. On January 6, 1997, Allmerica wrote to Plaintiff again, this time to inform her of an error in the October 8, 1996 death benefit information that it had sent her in October 1996. The letter informed Plaintiff that the first option was the same as outlined previously but that the second had been misstated. Instead of a monthly benefit of $2,457.27 if she deferred payment until February 1, 2002, Plaintiff was told that she would receive $1,952.97 if she elected to receive benefits at that time, and $2,664.35 if she deferred until February 1, 2006. The letter further informed her that payments "will commence . . . on February 1, 2006, unless written consent to commence payments as of an earlier date is received." Plaintiff chose not to commence the benefits earlier than February 1, 2006, and fully expected to begin to receive $2,664.35 a month beginning on February 1, 2006.

3

17. However, by letter dated June 12, 2002, PBGC notified Plaintiff that she was entitled to a monthly survivor payment of just $531.76 a month if she deferred payment until February 1, 2006, and only $415.84 a month if she opted for an early retirement option. This was the first notice that Plaintiff had that she might not receive the full spousal survivor benefits that she had been promised by Baker and Bonasera.

18. Plaintiff appealed PBGC's determination. By letter dated June 12, 2003, PBGC denied her appeal, explaining that the survivor benefits were substantially lower than had been represented to her because she and her husband were "substantial owners" of the company and the plan had terminated early.

19. PBGC substantially limits survivor benefits to "substantial owners" when a plan is terminated early. A "substantial owner" is anyone holding more than five percent of a company's stock.

20. PBGC's "substantial owner" limitations were, or should have been, well known by Baker, Baker Associates, Bonasera and Allmerica. Each of the defendants should have disclosed the limitations to Plaintiff and her husband prior to their purchasing the plan, but did not.

21. Neither Baker, Baker Associates, Bonasera nor anyone else from Allmerica ever disclosed PBGC's "substantial owner" limitations. To the contrary, Baker and Bonasera repeatedly led Plaintiff to believe that there were no such limitations, and that upon her death or upon the death of her husband, the surviving spouse was guaranteed by PBCG to receive 100% spousal survivor benefits. Even after the death of Plaintiff's husband, Allmerica and Bonasera assured Plaintiff that she was entitled to full spousal monthly benefits exceeding $2,000.

22. Plaintiff and her husband purchased the plan specifically in reliance upon the representations by Baker and Bonasera that they were guaranteed to receive full spousal benefits if one or the other

4

died. Had they known of the substantial owner limitations, they would not have purchased the plan. In addition, Plaintiff would not have folded the company.

## COUNT ONE
### Promissory Estoppel

23. Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1-22.

24. Baker and Bonasera made promises that they reasonably should have expected to induce action on the part of the Plaintiff.

25. The promises made by Baker and Bonasera induced such action.

26. The promises have been breached.

27. As a result of the breached promises and Plaintiff's reasonable reliance on the promises, Plaintiff has been substantially harmed.

28. Injustice can be avoided only by enforcement of the promises made by Baker and Bonasera.

29. Baker and Bonasera are liable to the Plaintiff because of their active participation in the misleading promises and personal benefits obtained from selling the pension plan to New England Chain and reasonable reliance thereon by Plaintiff.

30. Baker Associates and Allmerica are liable to the Plaintiff as the principals and/or employers of Baker and Bonasera.

## COUNT TWO
### (Negligent Misrepresentation)

31. Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1-22.

32. Baker's and Bonasera's representations to Plaintiff about the spousal benefits she would receive under the plan constitute negligent misrepresentations of material fact on which the Plaintiff reasonably relied to her detriment.

33. Bonasera and Allmerica made further negligent representations to Plaintiff after the death of her husband on which the Plaintiff reasonably relied to her detriment.

34. As a result of the negligent representations, Plaintiff has suffered substantial damages for which all defendants are liable.

35. Baker and Bonasera are liable to the Plaintiff because of their active participation in the negligent misrepresentations and personal benefits obtained from selling the pension plan to New England Chain.

36. Allmerica is liable to the Plaintiff because of its own negligent misrepresentations as well as because of its status as the Bonasera's principal and/or employer.

37. Baker Associates is liable to the Plaintiff as Baker's principal and/or employer

## COUNT THREE
### (Malpractice)

38. Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1-22.

39. The defendants owed a duty of care to the Plaintiff to exercise reasonable skill, care and diligence in procuring an appropriate retirement and pension plan.

40. The defendants failed to exercise the knowledge, skill and care ordinarily employed by members of their profession.

41. As a direct proximate cause of the defendants' negligence, Plaintiff suffered substantial damages for which all defendants are liable.

6

## COUNT FOUR
### (Breach of Contract)

42. Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1-22.

43. Plaintiff and her husband contracted with the defendants to purchase a pension plan that guaranteed full survival spousal benefits.

44. The defendants' conduct, including its failure to provide a pension plan that provided full survival spousal benefits, is a breach of a contract.

45. As a result of defendants' breach of contract, Plaintiff has suffered substantial damages.

## COUNT FIVE
### (Breach of Guaranty)

46. Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1-22.

47. Defendants' conduct, including their guaranties that Plaintiff would receive full spousal benefits under the plan and their failure to provide a plan that did in fact guarantee such payments constitutes a breach of guaranty.

48. As a result of defendants' breach of guaranty, Plaintiff has suffered substantial damages.

## COUNT SIX
### (Breach of Covenant of Good Faith and Fair Dealing)

49. Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1-22.

50. Defendants' conduct constitutes a breach of their implied covenant of good faith and fair dealing, a result of which the Plaintiff has suffered substantial damages.

7

## COUNT SEVEN
### (Consumer Protection Act)

51. Plaintiff hereby realleges and incorporates by reference the allegations contained in paragraphs 1-22.

52. The defendants are engaged in trade and commerce as defined under M.G.L.c. 93A.

53. The defendants committed unfair or deceptive trade acts and practices in violation of M.G.L.c. 93A, by their conduct, including, but not limited to their violation of regulations promulgated by the Attorney General under M.G.L. c. 93A, including but not limited to 940 CMR 3.01 (Warranty/Guarantee), 940 CMR 3.03 (Deceptive Advertising of Guarantees), 940 CMR 3.05 (General Misrepresentations), 940 CMR 3.08(2)(Warranties) and 940 CMR 3.16 (General).

54. Plaintiff further avers that the acts and practices of the defendants were willful and intentional, for which they are liable for multiple damages and reasonable attorney's fees and costs.

55. The Plaintiff has performed all necessary conditions precedent to this action within the purview of Mass. Gen. Laws ch. 93A, including the sending of a demand letter to the defendants, in response to which the defendants failed to make a reasonable offer of settlement.

WHEREFORE, Plaintiff demands the following relief:

A. That a Judgment issue against the defendants in favor of the Plaintiff, together with costs and interest, with an Execution to issue,

B. That judgment against the defendants in favor of the Plaintiff in treble the amount of the Plaintiff's actual damages pursuant to G.L. ch. 93A, §11.

C.  That the Plaintiff be awarded reasonable attorney's fees pursuant to G.L. ch. 93A, §11.

D.  For such other relief as the Court deems just and proper.

I HEREBY ATTEST AND CERTIFY ON
OCT. 26, 2004, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
ASSISTANT CLERK.
DATED: September 14, 2004

PLAINTIFF
By her attorneys,

_____
Shannon M. Fitzpatrick
BBO# 551090
Nathanson & Goldberg, P.C.
Two Oliver Street
Boston, MA 02109
(617) 210-4812

**PLAINTIFF DEMANDS A TRIAL BY JURY UPON ALL OF THE ISSUES**

9