UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 04-12188WGY

| | |
|---|---|
| MARIA MIARA,<br>    Plaintiff<br><br>v.<br><br>FIRST ALLMERICA FINANCIAL<br>LIFE INSURANCE COMPANY,<br>et al.,<br>    Defendants | MEMORANDUM IN SUPPORT<br>OF PLAINTIFF'S<br>MOTION TO REMAND |

Plaintiff, Maria Miara, submits this memorandum in support of her motion to remand this case to the Massachusetts Superior Court. The basis of plaintiff's motion is that this Court lacks subject matter jurisdiction over this matter, as Plaintiff's causes of action do not arise under ERISA and there are no other grounds for federal jurisdiction.

## I. BACKGROUND[1]

### A. Facts

Plaintiff, Maria Miara ("Maria" or "plaintiff") and her now deceased husband, Richard Miara, owned a small company called New England Chain Link Fence Co., Inc. In 1989, Maria contacted defendant Gary Baker of Bloom-Baker Insurance Association (now Baker Associates Insurance Agency Inc.) to inquire about establishing a pension plan or profit sharing plan for the company. Baker, in turn, brought in defendant Joseph Bonasera from State Mutual Life Assurance Company (now First Allmerica Financial Life Insurance Company ("Allmerica")) to discuss with Maria and her husband what plans were available. Baker and Bonasera met with the

---

[1] The facts recited herein are set forth in the plaintiff's complaint.

Plaintiff and her husband at least twice. Plaintiff and her husband repeatedly explained that whatever plan they chose must have spousal survivor benefits, particularly for the behalf of the Plaintiff, who was considerably younger than her husband.

Baker and Bonasera recommended a Defined Benefits Plan. They represented that although the plan was more expensive to administer, it had a great advantage over alternative plans because the Pension Benefit Guaranty Corporation ("PBGC") guaranteed the plan. They assured Plaintiff and her husband that PBGC guaranteed 100% spousal benefits in the event that anything were to happen to either Plaintiff or her husband. Baker and Bonasera did not give any qualifications to the guaranty of full spousal benefits.

In reliance on these representations, Plaintiff and her husband chose the Defined Benefits Plan that Baker and Bonasera had recommended (the "plan"). On August 22, 1996, Plaintiff's husband was killed in an automobile accident. Shortly thereafter, Bonasera told Plaintiff that in order to get the PBGC survivor benefits, she would have to close the company and put it into bankruptcy. In reliance on this advice, Plaintiff liquidated the company's assets and filed for Chapter 7 bankruptcy protection.

On October 8, 1996, Allmerica sent Plaintiff written spousal death benefit information, informing her that either she could start collecting monthly death benefits of $1,382.80 as of September 1, 1996, or defer collection until February 1, 2002, at which time she would get a monthly benefit of $2,457.27. When Plaintiff spoke with Bonasera about the options, he reiterated that she would get the full spousal benefit regardless of which option she chose because of PBGC's guaranty. Plaintiff wrote to Allmerica on December 4, 1996, to inform the company that she chose the second option.

On January 6, 1997, Allmerica wrote to Plaintiff again, this time to inform her of an error in the October 8, 1996 death benefit information that it had sent her in October 1996. The letter informed Plaintiff that the first option was the same as outlined previously but that the second had been misstated. Instead of a monthly benefit of $2,457.27 if she deferred payment until February 1, 2002, Plaintiff was told that she would receive $1,952.97 if she elected to receive benefits at that time, or $2,664.35 if she deferred until February 1, 2006. The letter further informed her that payments "will commence . . . on February 1, 2006, unless written consent to commence payments as of an earlier date is received." Plaintiff chose not to commence the benefits earlier than February 1, 2006, and fully expected to begin to receive $2,664.35 a month beginning on February 1, 2006.

To her great shock and chagrin, however, PBGC notified Plaintiff by letter dated June 12, 2002, that she was entitled to a monthly survivor payment of just $531.76 a month if she deferred payment until February 1, 2006, and only $415.84 a month if she opted for an early retirement option – more than $2,000 less than what Allmerica had assured her she would receive. This was the first notice that Plaintiff had that she would not receive the full spousal survivor benefits that she had been promised by Baker and Bonasera. Plaintiff appealed PBGC's determination, but her appeal was denied. PBGC explained that the survivor benefits were substantially lower than had been represented to her because she and her husband were "substantial owners" of the company and the plan had terminated early. PBGC substantially limits survivor benefits to "substantial owners" when a plan is terminated early. A "substantial owner" is anyone holding more than five percent of a company's stock.

### A.   Plaintiff's Causes of Action

In her complaint, the Plaintiff asserts causes of action based on promissory estoppel, negligent misrepresentation, malpractice, breach of contract, breach of guaranty, breach of the

covenant of good faith and fair dealing, and violation of M.G L ch. 9. Plaintiff claims that PBGC's "substantial owner" limitations were, or should have been, well known by Baker and Bonasera and that they should have disclosed the limitations to Plaintiff and her husband prior to their purchasing the plan, but did not. To the contrary, Baker and Bonasera repeatedly led Plaintiff to believe that there were no such limitations, and that upon her death or upon the death of her husband, the surviving spouse was guaranteed by PBCG to receive 100% spousal survivor benefits. Even after the death of Plaintiff's husband, Allmerica and Bonasera assured Plaintiff that she was entitled to full spousal monthly benefits exceeding $2,000. Plaintiff and her husband purchased the plan specifically in reliance upon the representations by Baker and Bonasera that they were guaranteed to receive full spousal benefits if one or the other died. Had they known of the substantial owner limitations, they would not have purchased the plan. In addition, Plaintiff would not have folded the company. Baker and Bonasera are named as individual defendants based on their active participation in the misstatements, while Baker Associates and Allmerica are named as defendants on the theory of respondeat superior.

**B.    ARGUMENT**

Plaintiff's allegations are centered on the claim that the defendants induced Plaintiff and her deceased husband to purchase a pension plan based on false or mistaken representations that the plan guaranteed the plaintiff 100 percent spousal survivor benefits. Plaintiff does not challenge the plan itself or the administration of the plan. Rather, she challenges the "procurement of the plan," claiming that the defendants should have known that spousal survivor benefits for "substantial owners" were subject to substantial limitations but failed, either deliberately or negligently, to disclose such limitations. *Giannetti v. Mahoney,* 218 F. Supp. 2d 8, 12 (D. Mass. 2002). As discussed in *Giannetti,* claims such as these are "run-of-the-mill misrepresentation claims" that do

not relate to an employee benefit plan and do not establish a basis for federal jurisdiction. *Id.* at 13.

In *Giannetti,* the plaintiffs brought suit in state court against the defendant insurance agent and his company based on alleged misrepresentations in selling them a group disability insurance plan. 218 F. Supp. 2d at 10. The plaintiffs' complaint set forth eleven state law causes of action claiming that the defendant agent and his company breached their promises to provide plaintiffs a policy based on certain specified "income" of one of the plaintiffs rather than on her actual "earnings." *Id.* at 11. When one of the plaintiffs became disabled, however, her disability payments were based on her actual earnings. *Id.* at 10. The defendants subsequently removed the case to this Court, asserting that the action involved a question of federal law under ERISA. *Id.* The Court remanded the case to the state court, finding that the plaintiffs' claims did not challenge the disability plan itself, but, rather, the procurement of the plan and, therefore, were simply "run-of-the-mill misrepresentation claims." *Id.* at 13. Because the claims were not based on the plan itself but, rather, on misrepresentations that were not part of the plan, they did not "relate to" an ERISA plan and were not preempted by ERISA. *Id.* Accordingly, the case was remanded.

Although *Giannetti* involved a disability insurance plan while the instant case concerns a pension plan, its principals apply equally to the case at hand. As in *Giannetti,* Maria Miara's claims are based on the defendants' misrepresentations made prior to the existence of the plan. The claims do not and will not affect the plan itself and, accordingly, are not preempted by ERISA. This case also is governed by *Industrial Technical Services v. Phoenix Home Life Mutual Insurance. Co.,* 866 F.Supp. 48, 50 (D. Mass. 1994), where the Court stated:

> In this case plaintiff also claims to have been lured into a false sense of security about the contents of its benefit package. [Plaintiff's] claims do not create any risk to the administration of the plan per se or to the calculation of the benefits as the plan exists. The claim is simply that the plaintiff got snookered at the initial sale. The plan itself was not what defendant represented it to be. This kind of claim **is** not preempted.

Similarly, in *Cuoco v. Nynex, Inc.*, 722 F. Supp. 884 (D. Mass. 1989), the plaintiff had charged the defendant with a series of misrepresentations regarding her benefit coverage under an employee benefit plan. Judge Skinner held that

> [Plaintiff's claims arise not from the deprivation of any rights under the NYNEX plan but from the series of promises and misrepresentations which were allegedly made to her by defendants in 1987. She was lured into a false sense of security as to her health insurance. . . . [The plaintiffs claims in this case relate to the NYNEX plan in "too tenuous, remote or peripheral a manner" to warrant a conclusion that the common law upon which the plaintiff relies is preempted by ERISA.

*Id.* at 886-87. Because the plaintiff's state law claims were not preempted, the Court held that there no original federal jurisdiction and, hence, no justification for removal.

As in *Giannetti, Industrial Technical Services and Cuoco,* plaintiff's claims rise from promises and misrepresentations made to her by the defendants that "lured" her into a "false sense of security" as to her spousal benefits. Just as the plaintiff's claims were not preempted by ERISA in the cited cases, nor are they here. Plaintiff's benefits under the plan already are established and are not at issue. PBGC already has determined that the plaintiff is not entitled to full spousal benefits. The plan need not even be considered, much less consulted to resolve the plaintiff's claims. The only questions in the case will be whether the defendants made the representations that the plaintiff claims they did and whether the defendants should have known that they were inaccurate. Plaintiff's claims are not preempted by ERISA and, accordingly, fall to establish federal subject matter jurisdiction.

## CONCLUSION

For these reasons, the Plaintiff requests that this case be remanded to the Massachusetts Superior Court at Suffolk County.

[Signature on next page]

PLAINTIFF,
By her attorneys,

*Shannon M. Fitzpatrick*

Shannon M. Fitzpatrick (BBO# 551090)
NATHANSON & GOLDBERG
Two Oliver Street, 8th Floor
Boston, MA 02109
Telephone: (617) 210-4812
Telecopy: (617/210-4824)

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record for defendants Gary M. Baker, Baker Associates Insurance Agency and First Allmerica Financial Insurance Company and upon Attorney William D. Chapman, who has not yet filed a notice of appearance but whom has informed the undersigned that he represents Joseph F. Bonasera, by mail on October 22, 2004.

*Shannon M. Fitzpatrick*

Shannon M. Fitzpatrick